<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| CRYOPAK INC., *Plaintiff*, v. FRESHLY LLC, successor to FRESHLY INC., and NESTLÉ USA, INC., *Defendants*. | Civil Action No. 23-18896 **OPINION** December 5, 2024 |

**SEMPER**, District Judge.

The current matter comes before the Court on two separate motions: (1) Defendant Freshly LLC's ("Freshly") Motion to Dismiss Plaintiff Cryopak Inc.'s ("Cryopak" or "Plaintiff") First Amended Complaint ("FAC") pursuant to Rule 12(b)(6) (ECF 44); and (2) Defendants Nestlé USA, Inc. ("Nestlé") and Honey Buyer, LLC's ("Honey Buyer" and together with Nestlé, "HBN") Motion to Dismiss Plaintiff's FAC pursuant to Rule 12(b)(2) and 12(b)(6). (ECF 45.) Plaintiff opposed the respective motions. (ECF 49; ECF 48.) Freshly and HBN filed briefs in further support of their respective Motions to Dismiss.[1] (ECF 51; ECF 52.) The Court reviewed all submissions made in support of and in opposition to the motions and considered the motions without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons

---

[1] Freshly's brief in support of its motion to dismiss (ECF 44-1) will be referred to as "Freshly MTD." Cryopak's brief in opposition to the Freshly motion (ECF 49) will be referred to as "Pl. Freshly Opp.," and Freshly's reply brief (ECF 51) will be referred to as "Freshly Rep." HBN's brief in support of their motion to dismiss (ECF 45-1) will be referred to as "HBN MTD." Cryopak's brief in opposition to HBN's motion (ECF 48) will be referred to as "Pl. HBN. Opp.," and HBN's reply brief (ECF 52) will be referred to as "HBN Rep."

1

stated below, Freshly's Motion is **GRANTED in part and DENIED in part** and HBN's Motion is **DENIED without prejudice.**

I. **FACTUAL AND PROCEDURAL BACKGROUND**[2]

Plaintiff Cryopak is a manufacturer of gel packs meant to be frozen and used to ship fresh food. (ECF 38, FAC ¶¶ 1, 12.) Until November 2022, Defendant Freshly was a meal-delivery service company engaged in the business of delivering meal kits directly to consumers. (*Id.* ¶ 13.) Defendant Nestlé is a Delaware corporation with its principal place of business in Virginia. (*Id.* ¶ 14.) Defendant Honey Buyer is a subsidiary and special-purpose entity of Nestlé created at time Freshly was purchased. (*Id.* ¶ 15.) Specifically, in 2017 Nestlé acquired 16% of Freshly and in 2020, Nestlé acquired the remaining equity in Freshly through its subsidiary, Honey Buyer. (*Id.* ¶ 30.)

On or about January 1, 2018, Cryopak entered into a Master Service and Supply Agreement (the "Master Agreement") wherein Cryopak agreed to provide 100% of Defendant Freshly's gel pack requirements for its Arizona and Maryland facilities for a period of two years. (*Id.* ¶¶ 1, 20, 24, Ex. A.) The Master Agreement was subsequently amended, and extended, three times in 2018, 2019, and 2020. (*Id.* ¶¶ 24-33, Exs. B, C, D.) The third amendment extended the Master Agreement through 2023, required Freshly to purchase 75% of its gel pack requirements for its Commerce, California and Atlanta, Georgia facilities from Cryopak, and promised the construction of new Cryopak manufacturing facilities and warehouses in or around both Commerce and Atlanta. (*Id.* Ex. D.) Plaintiff alleges that Freshly represented to Plaintiff that the Commerce facility would

---

[2] The factual and procedural background is taken from the FAC. (ECF 38.) The Court also relies on documents integral to or relied upon by the FAC and the public record. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

purchase no less gel packs than its Arizona facility, and the Atlanta facility would purchase no less gel packs than its Maryland facility. (*Id.* ¶¶ 35, 40.)

Plaintiff further alleges that on or about July 15, 2022, "[w]ithout any advance notice," Freshly notified Cryopak that its Georgia and California facilities would be closing. (*Id.* ¶ 44.) In or around November 2022, Nestlé sold Freshly, causing a merger with Kettle Cuisine. (*Id.* ¶ 57, 67.) This transaction allegedly caused Freshly to completely shutter its business on or about December 5, 2022, notifying Plaintiff that same day. (*Id.* ¶ 57.) Thus, Freshly could no longer fulfill its contractual obligation to purchase a quantity of gel packs from Plaintiff, which Plaintiff alleges is a breach of the Master Agreement. (*Id.* ¶¶ 58-60.) Additionally, Plaintiff's manufacturing facilities, which it was building in consideration of its obligations under the Master Agreement, are still incurring lease costs, and the Maryland facility was shut down. (*Id.* ¶¶ 61-66.) Plaintiff alleges that discussions of the Kettle Cuisine transaction were occurring simultaneously as Freshly made assertions that their business relationship with Plaintiff would continue "for years to come." (*Id.* ¶ 70.)

As a result, Plaintiff asserts claims of (a) breach of contract (Count I), (b) breach of the covenant of good faith and fair dealing (Count II), and (c) promissory estoppel (Count III) against Defendant Freshly. (ECF 38, FAC ¶¶ 90, 101, 107-08.) As to Defendants HBN, Plaintiff asserts a claim of (a) tortious interference with an existing contract (Count I). (*Id.* ¶¶ 114-15.)

## II.  STANDARD OF REVIEW

### A.  Rule 12(b)(2)

Rule 12(b)(2) permits a party to move to dismiss a case for "lack of personal jurisdiction." Fed. R. Civ. P. 12(b)(2). In such a motion to dismiss, the plaintiff "bears the burden of demonstrating the facts that establish personal jurisdiction." *Pinker v. Roche Holdings Ltd.*, 292

F.3d 361, 368 (3d Cir. 2002). To withstand a motion to dismiss under Rule 12(b)(2), a plaintiff bears the burden of establishing the court's personal jurisdiction over the defendant by a preponderance of the evidence. *D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 102 (3d Cir. 2009). When a court "resolves the jurisdictional issue in the absence of an evidentiary hearing and without the benefit of discovery, the plaintiff need only establish a prima facie case of personal jurisdiction." *Otsuka Pharm. Co. v. Mylan Inc.*, 106 F. Supp. 3d 456, 461 (D.N.J. 2015). In such cases, a court "take[s] the allegations of the complaint as true." *Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1302 (3d Cir. 1996).

Once a defendant raises a jurisdictional defense, "a plaintiff bears the burden of proving by affidavits or other competent evidence that jurisdiction is proper." *Id.* In other words, the court looks beyond the pleadings to all relevant evidence and construes all disputed facts in favor of the plaintiff. *See Carteret Sav. Bank v. Shushan*, 954 F.2d 141, 142 n.1 (3d Cir. 1992). Plaintiff must establish "with reasonable particularity sufficient contacts between the defendant and the forum state." *Otsuka*, 106 F. Supp. 3d at 462 (citing *Mellon Bank (E) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992)). If the plaintiff meets its burden, the burden shifts to the defendant, who must make a compelling case that the exercise of jurisdiction would be unreasonable.[3] *Mellon Bank*, 960 F.2d at 1226 (internal citations omitted).

### B. Rule 12(b)(6)

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a defendant to move to dismiss a count for "failure to state a claim upon which relief can be granted[.]" To withstand a motion to dismiss under Rule 12(b)(6), a plaintiff must allege "enough facts to state a claim to

---

[3] In addition, a court "may always revisit the issue of personal jurisdiction if later revelations reveal that the facts alleged in support of jurisdiction remain in dispute." *Otsuka*, 106 F. Supp. 3d at 462 n.5 (citing *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 331 (3d Cir.2009)).

relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint is plausible on its face when there is enough factual content "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the plausibility standard "does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted). As a result, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of [his] claims." *Id.* at 789.

In evaluating the sufficiency of a complaint, a district court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). A court, however, is "not compelled to accept unwarranted inferences, unsupported conclusions or legal conclusions disguised as factual allegations." *Baraka v. McGreevey*, 481 F.3d 187, 211 (3d Cir. 2007). If, after viewing the allegations in the complaint most favorable to the plaintiff, it appears that no relief could be granted under any set of facts consistent with the allegations, a court may dismiss the complaint for failure to state a claim. *DeFazio v. Leading Edge Recovery Sols.*, 2010 WL 5146765, at *1 (D.N.J. Dec. 13, 2010).

### III. ANALYSIS

#### A. Motions to Dismiss

##### 1. 12(b)(2) - Personal Jurisdiction – Nestlé and Honey Buyer (HBN)

HBN first argues for dismissal of Cryopak's FAC because they contend this Court cannot exercise personal jurisdiction over Nestlé or Honey Buyer.

A federal court "engages in a two-step inquiry to determine whether it may exercise personal jurisdiction": (1) "whether the relevant state long-arm statute permits the exercise of jurisdiction," and (2) "if so, [whether] the exercise of jurisdiction comports with due process" under the Fourteenth Amendment.[4] "New Jersey's long-arm statute extends the state's jurisdictional reach as far as the United States Constitution permits, so the analysis turns on the federal constitutional standard for personal jurisdiction." *Display Works, LLC v. Bartley*, 182 F. Supp. 3d 166, 172 (D.N.J. 2016) (citing *IMO Industries, Inc. v. Kiekert AG*, 155 F.3d 254, 259 (3d Cir. 1998)). Accordingly, the two steps are collapsed into one and "we ask whether, under the Due Process Clause, the defendant has certain minimum contacts with [New Jersey] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316 (3d Cir. 2007) (internal quotation marks omitted). In other words, to establish personal jurisdiction, the Due Process Clause requires (1) minimum contacts between the defendant and the forum; and (2) that jurisdiction over the defendant comports with "'fair play and substantial justice.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 320 (1945)).

A district court can assert either general jurisdiction (*i.e.*, "all-purpose" jurisdiction) or specific jurisdiction (*i.e.*, "case-linked" jurisdiction) over a defendant that has minimum contacts with the forum. *See Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty.*, 582 U.S. 255, 262 (2017). For foreign corporations, a "court may assert general jurisdiction . . . to hear any and all claims against them when their affiliations with the [forum] State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Fischer v.*

---

[4] *Display Works, LLC v. Bartley*, 182 F. Supp. 3d 166, 172 (D.N.J. 2016) (citing *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 258-59 (3d Cir. 1998)). *See also* Fed. R. Civ. P. 4(k)(1)(A) (indicating that service "establishes personal jurisdiction over a defendant . . . who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located.").

*Fed. Express Corp.*, 42 F.4th 366, 384 (3d Cir. 2022) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). To assert specific jurisdiction over a foreign corporation, two primary elements must be met: "[f]irst, there must be purposeful availment: minimum contacts with the forum state that show the defendant took a deliberate act reaching out to do business in that state. Second, the contacts must give rise to—or relate to—plaintiff's claims." *Hepp v. Facebook*, 14 F.4th 204, 207 (3d Cir. 2021) (citing *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024-25 (2021)). If these elements are met, the exercise of jurisdiction must "otherwise comport[] with fair play and substantial justice." *D'Jamoos*, 566 F.3d at 102 (quoting *Burger King Corp.,* 471 U.S. at 476).

### a) General Jurisdiction - Nestlé

The Court will first examine whether there is general jurisdiction over Nestlé[5] in New Jersey and then, if there is no general jurisdiction, whether there is specific jurisdiction.

"For a corporate defendant, the main bases for general jurisdiction are (1) the place of incorporation [or formation]; and (2) the principal place of business." *Display Works, LLC v. Bartley*, 182 F. Supp. 3d 166, 173 (D.N.J. 2016) (citing *Daimler AG v. Bauman*, 571 U.S. 117, 136 (2014)); *see also Fischer*, 42 F.4th at 383 ("For a corporation, general jurisdiction is only proper in states where the corporation is fairly regarded as 'at home,' which generally is restricted to the corporation's state of incorporation or the state of its principal place of business.").

"[G]eneral jurisdiction may [also] arise in the 'exceptional case' where 'a corporation's operations in a forum other than its formal place of incorporation or principal place of business may be so substantial and of such a nature as to render the corporation at home in that State.'" *Display Works*, 182 F. Supp. 3d at 173 (citation omitted); *see also Daimler AG*, 571

---

[5] In the FAC, Plaintiff does not allege this Court has general jurisdiction over Honey Buyer. (ECF 38, FAC ¶¶ 16-19.)

U.S. at 139 n.19. Such an exceptional case requires a plaintiff to furnish at least some evidence that reasonably suggests that a corporate entity's contacts with the forum state are so substantial that they surpass the entity's contacts with other states. *See, e.g.*, *Ontel Prod. Corp. v. Mindscope Prod.*, 220 F. Supp. 3d 555, 560 (D.N.J. 2016) ("[Plaintiff] does not provide any evidence that reasonably suggests that indirect sales in New Jersey occur at all or that those sales surpass [the defendant's] third party sales made elsewhere.").

Here, Plaintiff confirms that Nestlé is not incorporated in New Jersey, but rather in the state of Delaware. Further, Plaintiff alleges Nestlé's principal place of business is in the state of Virginia. (ECF 38, FAC ¶¶ 13-14.) Plaintiff does not allege that Nestlé's connection to New Jersey is so systematic such that it is essentially "at home" in New Jersey[6] (and Plaintiff does not allege that Honey Buyer is subject to general jurisdiction at all). Plaintiff alleges only that Nestlé is registered to conduct business in New Jersey, conducts business in New Jersey, and maintains a registered agent in the state. (*Id.* ¶ 18.)

It is well established that parties can consent to personal jurisdiction. *See Burger King Corp.*, 471 U.S. at 472 n.14; *see also Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122, 138 (2023) ("[E]xpress or implied consent can continue to ground personal jurisdiction—and consent may be manifested in various ways by word or deed." (citations omitted)). Under certain circumstances, a corporation's registration to do business in a state may evidence its consent to personal jurisdiction in that forum. *See Mallory*, 600 U.S. at 138-40; *Bane v. Netlink, Inc.*, 925 F.2d 637, 641 (3d Cir. 1991) (holding that a statute explicitly listing "consent" as a basis for personal jurisdiction over corporate defendants established personal jurisdiction). However, here, Plaintiff's reliance on *Mallory* is inapposite because the registration statutes at issue are

---

[6] For example, Plaintiff does not allege that Nestlé has offices in New Jersey, that a large percentage of Nestlé's employees work in New Jersey, or that Nestlé owns or uses any property in New Jersey.

8

distinguishable, and "[u]nlike the express consent statute at issue in *Mallory*, New Jersey's registration statute does not include such an express consent requirement." *Simplot India LLC v. Himalaya Food Intl. Ltd.*, No. 23-1612, 2024 WL 1136791, at *10 (D.N.J. Mar. 15, 2024). Indeed, "[t]he question the plurality in *Mallory* addressed was narrow: whether a state could compel registering corporations to consent to general personal jurisdiction, which the Court held it could. The fact that a state *may* write its corporation registration laws in a way that explicitly constitutes consent does not mean that every state corporation registration law necessarily does so." *Simplot India LLC*, 2024 WL 1136791, at *10 (internal citations omitted).

Without any allegations in the FAC evincing Nestlé being "essentially at home" in New Jersey, there are no grounds for general jurisdiction here. *See BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 414 (2017) (holding that a corporation is not "at home" in a state under the "exceptional case" doctrine even when it maintains 2,000 miles of railroad track in a particular state and employs 2,000 people in the state).

### b) Specific Jurisdiction – Nestlé and Honey Buyer

Specific jurisdiction allows the court to adjudicate claims levied against defendants with "certain minimum contacts . . . such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co.*, 326 U.S. at 316 (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). The Third Circuit has laid out a three-part test to determine whether specific jurisdiction exists as to a particular defendant. *O'Connor*, 496 F.3d at 317. First, the defendant must have "purposefully directed [its] activities at the forum."[7] *Id.* (internal

---

[7] This factor has also been characterized as "purposeful availment," and focuses on contact that the defendant itself created within the forum state. *Burger King Corp.*, 471 U.S. at 475. The "purposefully directed" or "purposeful availment" requirement is designed to prevent a person from being haled into a jurisdiction "solely as the result of random, fortuitous, or attenuated contacts" or due to the "unilateral activity of another party or third person[.]" *Id.* (internal quotation marks omitted) (citing *Keeton v. Hustler Mag., Inc.,* 465 U.S. 770, 774 (1984); *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 299 (1980); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984).

quotation marks omitted). "Second, the plaintiff's claims 'must also arise out of or relate to' the defendant's activities."[8] *Danziger & De Llano, LLP v. Morgan Verkamp LLC*, 948 F.3d 124, 129-30 (3d Cir. 2020) (quoting *O'Connor*, 496 F.3d at 317); *see also Helicopteros*, 466 U.S. at 414. "And third, exercising personal jurisdiction must not 'offend traditional notions of fair play and substantial justice.'"[9] *Danziger*, 948 F.3d at 130 (quoting *O'Connor*, 496 F.3d at 317); *see also International Shoe*, 326 U.S. at 316.

Specific jurisdiction determinations are "claim specific." *Remick v. Manfredy*, 238 F.3d 248, 255 (3d Cir. 2001). "[A] conclusion that the District Court has personal jurisdiction over one of the defendants as to a particular claim asserted by [the plaintiff] does not necessarily mean that it has personal jurisdiction over that same defendant as to [the plaintiff]'s other claims." *Id.* The Third Circuit has recognized that although it "may not be necessary" to "conduct a claim-specific analysis" in "every multiple claim case . . . because there are different considerations in analyzing jurisdiction over contract claims and over certain tort claims," such differentiation is required in certain circumstances. *Id.*

Here, Plaintiff brings one cause of action for tortious interference with contract against both Nestlé and Honey Buyer. When an intentional tort is alleged, a slight variation from the

---

[8] This has been described as the "relatedness" element. *See MaxLite, Inc. v. ATG Elecs., Inc.,* 193 F. Supp. 3d 371, 384 (D.N.J. 2016) (citing *O'Connor,* 496 F.3d at 317). To meet this element, "causal connection can be somewhat looser than the tort concept of proximate causation, but it must nonetheless be intimate enough to keep the quid pro quo proportional and personal jurisdiction reasonably foreseeable." *O'Connor*, 496 F.3d at 323 (citation omitted). This is a "necessarily fact-sensitive" inquiry. *Id.* The "animating principle" behind it "is the notion of a tacit quid pro quo that makes litigation in the forum reasonably foreseeable." *Id.* at 322.

[9] Notably, "[t]he existence of minimum contacts makes jurisdiction presumptively constitutional, and the defendant 'must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" *O'Connor*, 496 F.3d at 324 (quoting *Burger King Corp.*, 471 U.S. at 477). Factors to consider are "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004). Yet, jurisdiction will only be unreasonable in "rare" cases and a plaintiff's burden to show an absence of fairness or lack of substantial justice is "heavy." *O'Connor*, 496 F.3d at 324.

*O'Connor* three-part test applies, known as the *Calder* effects test, stemming from the Supreme Court's decision in *Calder v. Jones*, 465 U.S. 783 (1984). The *Calder* effects test "can demonstrate a court's jurisdiction over a defendant even when the defendant's contacts with the forum alone [] are far too small to comport with the requirements of due process under our traditional analysis." *Marten v. Godwin*, 499 F.3d 290, 297 (3d Cir. 2007)). Under this test, "an intentional tort directed at the plaintiff and having sufficient impact upon [the plaintiff] in the forum may suffice to enhance otherwise insufficient contacts with the forum such that the 'minimum contacts' prong of the Due Process test is satisfied." *Marten*, 499 F.3d at 297 (quoting *IMO Industries.*, 155 F.3d at 260). The *Calder* effects test requires a plaintiff to show that:

> (1) The defendant committed an intentional tort; (2) The plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that tort; (3) The defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity[.]

*Marten*, 499 F.3d at 297 (quoting *IMO Industries*, 155 F.3d at 265-66). The *Calder* effects test, as interpreted by the Third Circuit, still requires that a "defendant's conduct and connection with the forum State [be] such that he should reasonably anticipate being haled into court there." *Marten*, 499 F.3d at 297 (quoting *World-Wide Volkswagen*, 444 U.S. at 297.).

Prior to discussing the first two prongs of the *Calder* effects test, the Court notes that the third prong of the effects test—whether the defendant "expressly aimed" its tortious conduct at New Jersey—is a threshold inquiry. *See Marten*, 499 F.3d at 297. The plaintiff carries an "onerous burden" in making that showing. *Torre v. Kardooni*, No. 22-4693, 2022 WL 17813069, at *4 (D.N.J. Nov. 29, 2022).[10] To satisfy the "expressly aimed" element of the effects test, the plaintiff

---

[10] Report and recommendation adopted, No. 22-4693, 2022 WL 17812193 (D.N.J. Dec. 19, 2022); *Doe v Hesketh*, 15 F. Supp. 3d 586, 593 (E.D. Pa. 2014) ("[The 'expressly aimed'] standard is exacting.").

11

must "(1) show that the defendant knew that the plaintiff would feel the thrust of the tortious conduct in the forum; and (2) specifically point to activity that indicates the defendant expressly and intentionally targeted the tortious conduct at the forum." *Torre*, 2022 WL 17813069, at *4 (citing *Marten*, 499 F.3d at 298). "If a plaintiff fails to show that the defendant 'manifest[ed] behavior intentionally targeted at and focused on' the forum, the plaintiff fails to establish jurisdiction under the effects test." *Marten*, 499 F.3d at 298 (citing *IMO Indus.*, 155 F.3d at 265) (internal citations omitted).

As pled, Plaintiff does not point to any specific activity that Nestlé or Honey Buyer aimed at New Jersey, nor does Plaintiff explain how either Nestlé or Honey Buyer intentionally directed their allegedly tortious conduct at New Jersey. Although Plaintiff vaguely alleges that this Court has specific jurisdiction over Defendants Nestlé and Honey Buyer because the Defendants allegedly committed tortious acts that impacted and injured Plaintiff in the State of New Jersey (ECF 38, Compl. ¶ 17), this is insufficient. *See Sciore v. Phung*, No. 19-13775, 2022 WL 950261 (D.N.J. Mar. 30, 2022) (citing *IMO Indus.*, 155 F.3d at 261-63).

However, despite Plaintiff's pleading deficiencies, on a motion to dismiss for lack of personal jurisdiction, discovery may be "available to ascertain the facts bearing on [the issue]." *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 336 (3d Cir. 2009) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 n.13 (1978)). Indeed, "jurisdictional discovery should be allowed unless the plaintiff's [jurisdictional] claim is clearly frivolous." *Massachusetts Sch. of L. at Andover, Inc. v. Am. Bar Ass'n*, 107 F.3d 1026, 1042 (3d Cir. 1997) (cleaned up). Furthermore, there is a "presumption" of jurisdictional discovery as to defendants that are corporations. *See Andover*, 107 F.3d at 1042; *cf. Metcalfe*, 566 F.3d at 336 ("jurisdictional discovery [is] particularly appropriate where the defendant is a corporation").

12

Here, Defendant Nestlé is a corporation and Defendant Honey Buyer is a limited liability company. (*See* FAC ¶¶ 14-15.) Plaintiff has also presented a basis for jurisdiction that is not clearly frivolous as Plaintiff has pled that Nestlé is a corporation which "regularly conducts business in New Jersey." (FAC ¶ 18.) *See Marchionda v. Embassy Suites, Inc.*, 122 F. Supp. 3d 208, 211 (D.N.J. 2015) (permitting jurisdictional discovery where the plaintiff only alleged the defendants "engage[d] in substantial business in the State of New Jersey and [otherwise] ha[d] significant contacts with New Jersey" because defendants were large, well-known corporate entities with numerous corporate forms and operations that were wide in scope). Furthermore, it is clear that without jurisdictional discovery, Plaintiff is limited to proffering evidence regarding Nestlé and Honey Buyer's participation in Freshly's business in New Jersey based on publicly available records. (ECF 48, Pl. Opp. at 19.) Certainly, agreements and other information bearing on Nestlé and Honey Buyer's acquisition of Freshly and the Kettle Cuisine Transaction remain in the possession of Nestlé and Honey Buyer. (*Id*.)

Therefore, to fully develop the jurisdictional record, Plaintiff's request for leave to conduct limited jurisdictional discovery is **GRANTED**. HBN's motions to dismiss are **DENIED without prejudice** to allow for jurisdictional discovery. The Court grants leave to HBN to file renewed motions to dismiss under Rule 12(b)(2) and/or Rule 12(b)(6), following the completion of jurisdictional discovery.

### 2. 12(b)(6) – Freshly

In an action based on diversity of citizenship, a federal court generally applies the choice-of-law rules of the jurisdiction in which it sits. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Here, the parties agree that New York law applies to this action because the Master

13

Agreement from which this matter derives contains a choice of law clause providing that it is to be construed in accordance with New York law. (ECF 38-1, "Master Agreement", Ex. A § 24.)

### a) Breach of Contract

Cryopak alleges that the Master Agreement and the Amendments constitute a valid and enforceable agreement. (ECF 38, FAC ¶ 77.) Further, Cryopak alleges numerous breaches by Freshly causing damages in various forms to Cryopak. (*Id*. ¶¶ 76-91.)

Under New York law, "[t]o plead a cause of action for breach of contract, a plaintiff must allege that (1) a contract exists, (2) plaintiff performed in accordance with that contract, (3) defendant breached its contractual obligations, and (4) defendant's breach resulted in damages." *See 34-06 73*, *LLC v. Seneca Ins. Co.*, 198 N.E.3d 1282, 1287 (N.Y. 2022) (internal citations and quotation marks omitted). If the unambiguous terms of the contract itself do not support the plaintiff's claim, then the claim must be dismissed. *Spinelli v. Nat'l Football League*, 96 F. Supp. 3d 81, 131 (S.D.N.Y. 2015). Further, under "New York law and the *Twombly-Iqbal* standards of federal pleading require a complaint to identify, in non-conclusory fashion, the specific terms of the contract that a defendant has breached. Otherwise, the complaint must be dismissed." *Id*.

Here, Freshly acknowledges that a binding and enforceable contract exists between the parties, and Freshly does not dispute that Cryopak has alleged that it has fulfilled its obligations under the terms of the Master agreement and that Cryopak has been damaged as a result of the alleged breach. (ECF 44-1, Freshly MTD. at 13.) Instead, Freshly's opposition focuses on the fact that Cryopak has failed to adequately allege a breach of the Master Agreement. (*Id*. at 13-27.) Indeed, at a high level, Freshly argues that Cryopak (1) cannot premise a breach of contract on the closure of Freshly's Atlanta and California facilities; (2) cannot premise a breach of contract on

14

Freshly's alleged failure to submit purchase orders for gels; and (3) does not plausibly allege a breach of section 13.2. (*Id*. at 14-22.)

Despite Freshly's assertions, the FAC alleges that Freshly failed to perform its obligations under the Master Agreement and its Amendments in several ways. First, the FAC alleges that without any notice, Freshly told Cryopak that it had no need for any gel from its Georgia and California facilities just months after Cryopak expended considerable sums in preparation for performance under the Third Amendment. (FAC ¶¶ 83-85). Second, the term of the Master Agreement, as amended, was set to expire at the end of 2023, and Freshly prematurely cut it short when it ceased its business operations in December 2022 and terminated the Parties' contractual relationship. (*Id*. ¶¶ 36, 41, 89). Third, the FAC alleges Freshly breached the Master Agreement when it entered into the Kettle Cuisine Transaction, in direct violation of the express terms of Section 13.2, which prohibited Freshly from entering into any agreement that would prevent from performing its obligations under the contract. (*Id*. at ¶¶ 79-82).

Accepting all factual allegations in the FAC as true and drawing all reasonable inferences in favor of the plaintiff, the Court finds Plaintiff's allegations sufficient to survive a motion to dismiss. Accordingly, Defendant's motion to dismiss Count I of the FAC is **DENIED**.

### b) Implied Covenant of Good Faith and Fair Dealing

Cryopak alleges that Freshly violated the implied covenant of good faith and fair dealing implied in all contracts in New York as Freshly had been planning to shut down its entire business operations for months while simultaneously making misleading representations to Cryopak. (ECF 49, Pl. Freshly Opp. at 33.) Freshly argues that Cryopak's claim for breach of the covenant of good faith and fair dealing "is based on the same allegations as Cryopak's breach of contract claim," is not consistent with the terms of the Master Agreement, and "is premised on extra-contractual

15

representations that are barred by the NOM and Merger Clauses." (ECF 44-1, Freshly MTD at 29-32.) Freshly thus moves to dismiss Count II for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Under New York law, "all contracts imply a covenant of good faith and fair dealing in the course of performance." *511 W. 232nd Owners Corp. v. Jennifer Realty Co.*, 773 N.E.2d 496, 500 (N.Y. 2002). This implied covenant requires that "neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Id.* "While the duties of good faith and fair dealing do not imply obligations inconsistent with other terms of the contractual relationship, they do encompass any promises which a reasonable person in the position of the promisee would be justified in understanding were included." *Id.* (internal quotations and citations omitted).

Critically, "New York law . . . does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled." *Marans v. Intrinsiq Specialty Sols., Inc.*, No. 18-256, 2018 WL 4759772, at *5 (S.D.N.Y. Sept. 30, 2018). "[W]hen a complaint alleges both a breach of contract and a breach of the implied covenant of good faith and fair dealing based on the same facts, the latter claim should be dismissed as redundant." *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 125 (2d Cir. 2013).

Here, Cryopak alleges that Freshly "continued to represent to [Cryopak] that the Parties would have a healthy, long-term commercial relationship, one that would continue unabated for years to come." (FAC ¶ 95). These representations, Cryopak argues, led Cryopak to invest in the California and Georgia Facilities, for which Freshly "almost immediately" claimed there was a lack of demand. (Pl. Freshly. Opp at 33.) Furthermore, Cryopak argues that Freshly made

16

misleading representations about the quantity of gel packs its California and Georgia facilities would require. (*Id.*) As a result and based on Freshly's alleged representations in meetings and forecasts it provided, as well as the binding purchase orders issued by Freshly to Cryopak for delivery of gels into 2023, Cryopak continued operating its facilities and procured sufficient raw materials to meet Freshly's anticipated demands. (*Id.* at 35.)

Cryopak acknowledges the "factual overlap" between its breach of contract claim and its implied covenant claim but maintains that the implied covenant claim "seeks to hold Freshly accountable" for "the exercise of its discretion under Section 4.4. . . ." (Pl. Freshly Opp. at 31-32.) In layman's terms, Cryopak attempts to argue that to the extent the closure of Freshly's California and Georgia facilities and subsequent shutdown were permissible under the express terms of the Agreement, Cryopak argues that the very same alleged conduct was an abuse of the contractual discretion afforded Freshly under paragraph 4.4. And like its breach of contract claim, Cryopak's claim for breach of the implied covenant seeks damages arising out of the Shutdown. (*See* FAC ¶¶ 76-101.)

Freshly maintains that Cryopak's implied covenant claim is impermissibly duplicative of the breach of contract claim. The Court agrees. Like its breach of contract claim, Cryopak's implied covenant claim seeks to recover the sums it expended to perform its own obligations under the Agreement. And like its breach of contract claim, Cryopak's implied covenant claim alleges a breach arising out of the Shutdown. (*Id.*) Cryopak's argument that its implied covenant claim is independent of its breach of contract claim is unpersuasive.

Accordingly, Cryopak's contractual implied covenant claims are duplicative of the breach of contract claims and must be **DISMISSED with prejudice**. Freshly's motion to dismiss Count II of the FAC is **GRANTED**.

c) **Promissory Estoppel**

Finally, Cryopak brings a claim against Freshly for promissory estoppel asserting in chief that Cryopak relied to its detriment on promises made by Freshly concerning the parties business relationship. (FAC ¶¶ 102-08.) Freshly contends that "at bottom" Cryopak's claim for promissory estoppel is an attempt to enforce the unsigned Fourth Amendment, and Cryopak is unable to establish reasonable reliance. (ECF 44-1, Freshly MTD at 33; ECF 51, Freshly Rep. at 14.)

"[P]romissory estoppel has three elements: [1] a clear and unambiguous promise; [2] a reasonable and foreseeable reliance by the party to whom the promise is made[;] and [3] an injury sustained by the party asserting the estoppel by reason of the reliance." *Wolet Cap. Corp. v. Walmart Inc.*, No. 18-12380, 2021 WL 242297, at *13 (S.D.N.Y. Jan. 25, 2021) (citing *Cyberchron Corp. v. Calldata Sys. Dev., Inc.*, 47 F.3d 39, 44 (2d Cir. 1995)). A claim for promissory estoppel requires that there be "a clear and unambiguous promise," which shows a defendant's "unambiguous intent to be bound." *Paramax Corp. v. VoIP Supply, LLC*, 175 A.D.3d 939, 941 (2019) (4th Dep't 2019); *Broughel v. Battery Conservancy*, No. 07-7755, 2009 WL 928280, at *8-9 (S.D.N.Y. Mar. 30, 2009).

Here, Cryopak alleges that Freshly promised on several occasions that it would continue its business relationship for the next five years and its volume of purchase orders would be the same. (ECF 38, FAC ¶¶ 103-04). In reliance on Defendant's representations that the parties would continue conducting business for the next five years, Plaintiff alleges that it renewed leases and incurred costs for equipment, inventory, leases, and other expenses at its Arizona, Georgia, Maryland, and California Facilities. (*Id.* ¶ 105). Further, Cryopak alleges that it also continued to incur additional expenses associated with all of its facilities for equipment and inventory based on Defendant Freshly's representations concerning the gel requirements and the Parties' business

relationship anticipated for the next "several years." (*Id*. ¶ 106.) On December 5, 2022, Defendant Freshly informed Plaintiff that it ceased operations and reneged on the promises and representations reflected above, all of which Plaintiff reasonably relied on to its detriment. (*Id*. ¶ 107.)

Despite the allegations in the FAC, Freshly correctly argues that Cryopak as a matter of law is unable to establish reasonable reliance. Indeed, Cryopak's main contention in opposition is that the no-oral-modification ("NOM") and Merger clauses do not apply to Freshly's alleged oral representations because the Master Agreement "do[es] not arise out of the same subject matter." (ECF 49, Pl. Freshly Opp. at 38.) However, the Master Agreement covers the exact same subject matter as Freshly's alleged "representations." Critically, it provides for a term ending December 31, 2023 and makes Cryopak Freshly's exclusive supplier of gels for the Maryland and Arizona facilities: the very subject of Freshly's alleged representations. (FAC ¶¶ 23-24.) Therefore, based upon the NOM and Merger clauses, any claim founded on representations purporting to modify or extend these terms were barred and any alleged reliance on such representations was unreasonable as a matter of law. *Ixe Banco, S.A. v. MBNA Am. Bank, N.A.*, No. 07-0432, 2008 WL 650403, at *12 (S.D.N.Y. Mar. 7, 2008).

Additionally, "in the absence of 'egregious' circumstances, courts have consistently rejected promissory estoppel claims when the alleged injuries consisted of lost profits, lost fees, [or] forgone business opportunities." *Wolet Cap. Corp.*, 2021 WL 242297 at *42. Here, Cryopak alleges only ordinary economic harms as the FAC alleges lease and equipment costs and other costs and expenses (such as costs of inventory) at its Arizona facility and other facilities. (FAC ¶¶ 92-93.) Such ordinary expectation damages do not constitute unconscionable injuries as a matter of law. *See Darby Trading Inc. v. Shell Int'l Trading & Shipping Co.*, 568 F. Supp. 2d 329, 341

19

(S.D.N.Y. 2008) ("[I]n the absence of 'egregious' circumstances, courts have consistently rejected promissory estoppel claims when the alleged injuries consisted of lost profits, lost fees, foregone business opportunities or damage to business reputation.").

Based upon the foregoing, Freshly's motion to dismiss Count III of the FAC is **GRANTED** and Cryopak's claim for promissory estoppel is **DISMISSED with prejudice**.

IV.   **CONCLUSION**

For the reasons set forth above, Freshly's Motion is **GRANTED in part and DENIED in part** and HBN's Motions are **DENIED without prejudice**. An appropriate order follows.

/s/ Jamel K. Semper
**HON. JAMEL K. SEMPER**
**United States District Judge**

Orig:        Clerk
cc:          Stacey D. Adams, U.S.M.J.