<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

<table>
<tr><td>

CRYOPAK INC.,

        *Plaintiff*,

v.

FRESHLY LLC, et al.,

        *Defendants*.

</td><td>

Civil Action No. 23-18896

**OPINION**

May 4, 2026

</td></tr>
</table>

**SEMPER**, District Judge.

**THIS MATTER** having come before this Court upon Defendants Nestlé USA, Inc. ("Nestlé") and Honey Buyer, LLC's ("Honey Buyer" and together with Nestlé, "HBN") Renewed Motion to Dismiss Plaintiff Cryopak Inc.'s ("Cryopak") Amended Complaint (ECF 38, "FAC") pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6). (ECF 92, "Motion" or "Mot.") Plaintiff opposed HBN's Motion. (ECF 98, "Opposition" or "Opp.") HBN filed a reply. (ECF 99, "Reply.") The Court reviewed all submissions made in support of and in opposition to the motion and considered the motion without oral argument pursuant to Fed. R. Civ. P. 78 and L. Civ. R. 78.1. For the reasons stated below, Defendants HBN's Motion to Dismiss Plaintiff's FAC is **GRANTED**.

## I.    FACTUAL AND PROCEDURAL BACKGROUND[1]

The following is an edited summary of the factual background of this action previously provided in this Court's December 5, 2024 Opinion denying HBN's motion to dismiss without

---

[1] The factual and procedural background are drawn from the Court's Opinion dated December 5, 2024, (ECF 54, "Op."), and the FAC, (ECF 38.) The Court also relies on documents integral to or relied upon by the FAC and the public record. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

prejudice. (ECF 54, "Op.") Plaintiff is a manufacturer of gel packs meant to be frozen and used to ship fresh food. (FAC ¶¶ 1, 12.) Until November 2022, Defendant Freshly was a meal-delivery service company engaged in the business of delivering meal kits directly to consumers. (*Id*. ¶ 13.) Defendant Nestlé is a Delaware corporation with its principal place of business in Virginia. (*Id*. ¶ 14.) Defendant Honey Buyer is a subsidiary and special-purpose entity of Nestlé created at the time Freshly was purchased. (*Id*. ¶ 15.) Specifically, Nestlé acquired 16% of Freshly in 2017 and acquired the remaining equity in Freshly through its subsidiary, Honey Buyer, in 2020. (*Id*. ¶ 30.)

On or about January 1, 2018, Plaintiff entered into a Master Service and Supply Agreement ("Master Agreement") wherein Cryopak agreed to provide 100% of Defendant Freshly's gel pack requirements for its Arizona and Maryland facilities for a period of two years. (*Id.* ¶¶ 1, 20, 24, Ex. A.) The Master Agreement was subsequently amended and extended three times in 2018, 2019, and 2020. (*Id.* ¶¶ 24-33, Exs. B, C, D.) The third amendment extended the Master Agreement through 2023, required Freshly to purchase 75% of its gel pack requirements for its Commerce, California and Atlanta, Georgia facilities from Plaintiff, and promised the construction of new Cryopak manufacturing facilities and warehouses in or around both Commerce and Atlanta. (*Id.* Ex. D.)

Plaintiff further alleges that on or about July 15, 2022, "[w]ithout any advance notice," Freshly notified Cryopak that its Georgia and California facilities would be closing. (*Id.* ¶ 44.) In or around November 2022, Nestlé sold Freshly to private equity firm *L* Catterton, causing a merger with Kettle Cuisine. (*Id.* ¶¶ 57, 67.) This transaction allegedly caused Freshly to completely shutter its business on or about December 5, 2022, notifying Plaintiff that same day. (*Id.* ¶ 57.) Thus, Freshly could no longer fulfill its contractual obligation to purchase a quantity of gel packs from Plaintiff, which Plaintiff alleges is a breach of the Master Agreement. (*Id*. ¶¶ 58-60.)

2

In the Amended Complaint, Plaintiff asserts one claim against Defendants HBN: tortious interference of Cryopak's existing contract with Freshly (Count IV).[2] (FAC ¶¶ 109-15.) On March 11, 2024, Defendants HBN moved to dismiss Plaintiff's FAC pursuant to Fed. R. Civ. P. 12(b)(2) and in the alternative Rule 12(b)(6). (ECF 45.) Plaintiff opposed HBN's motion, (ECF 48), and HBN replied. (ECF 52.) On December 5, 2024, this Court denied HBN's motion without prejudice to allow for jurisdictional discovery and granted HBN leave to file a renewed motion to dismiss following the completion of jurisdictional discovery. (*See generally* Op.)

In accordance with this Court's December 5, 2024 Opinion, the Court and parties held status conferences (Min. Entries dated Jan. 15, 2025, March 4, 2025, and May 9, 2025) and set a schedule to complete limited jurisdictional discovery. (ECF 62.) The discovery included interrogatory responses from all Defendants, transaction documents from both HBN's 2020 acquisition and 2022 divestiture of Freshly, an Electronically Stored Information ("ESI") production, a privilege log, and the deposition of Nestlé's Director of Mergers, Acquisitions, and Strategy, Brad Goshorn. (Mot. at 7-8; Opp. at 7; *see also infra* Section III.A.2.a.)

Following the close of jurisdictional discovery, on October 31, 2025, Defendants HBN renewed their Motion to Dismiss Plaintiff's FAC pursuant to Fed. R. Civ. P. 12(b)(2) and in the alternative Rule 12(b)(6). (*See generally* Mot.) On December 1, 2025, Plaintiff opposed. (*See generally* Pl. Opp.) On December 8, 2025, HBN replied. (*See generally* Reply.)

## II.    STANDARD OF REVIEW

### A.  Rule 12(b)(2)

---

[2] Regarding Defendant Freshly, Plaintiff asserts three claims: breach of contract (Count I); breach of the covenant of good faith and fair dealing (Count II); and promissory estoppel (Count III). (FAC ¶¶ 76-108.) On March 11, 2024, Defendant Freshly moved to dismiss Plaintiff's FAC pursuant to Fed. R. Civ. P. 12(b)(6). (ECF 44.) Plaintiff opposed Defendant's motion, (ECF 49), and Freshly replied, (ECF 51.) On December 5, 2024, this Court denied Freshly's motion as to Count I but granted in part, dismissing Counts II-III with prejudice. (*See generally* Op.)

Rule 12(b)(2) permits a party to move to dismiss a case for "lack of personal jurisdiction." Fed. R. Civ. P. 12(b)(2).  To withstand a motion to dismiss under Rule 12(b)(2), a plaintiff bears the burden of establishing the court's personal jurisdiction over the defendant by a preponderance of the evidence.  *D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 102 (3d Cir. 2009).  When a court "resolves the jurisdictional issue in the absence of an evidentiary hearing and without the benefit of discovery, the plaintiff need only establish a prima facie case of personal jurisdiction."  *Otsuka Pharm. Co. v. Mylan Inc.*, 106 F. Supp. 3d 456, 461 (D.N.J. 2015). In such cases, a court "take[s] the allegations of the complaint as true." *Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1302 (3d Cir. 1996).

Once a defendant raises a jurisdictional defense, "a plaintiff bears the burden of proving by affidavits or other competent evidence that jurisdiction is proper." *Id.*  In other words, the court looks beyond the pleadings to all relevant evidence and construes all disputed facts in favor of the plaintiff.  *See Carteret Sav. Bank v. Shushan*, 954 F.2d 141, 142 n.1 (3d Cir. 1992).  Plaintiff must establish "with reasonable particularity sufficient contacts between the defendant and the forum state." *Otsuka*, 106 F. Supp. 3d at 462 (citing *Mellon Bank (E) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992)).  If the plaintiff meets its burden, the burden shifts to the defendant, who must make a compelling case that the exercise of jurisdiction would be unreasonable.[3]  *Mellon Bank*, 960 F.2d at 1226 (internal citations omitted).

### B.  Rule 12(b)(6)

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a defendant to move to dismiss a count for "failure to state a claim upon which relief can be granted[.]"  To withstand a

---

[3] In addition, a court "may always revisit the issue of personal jurisdiction if later revelations reveal that the facts alleged in support of jurisdiction remain in dispute." *Otsuka*, 106 F. Supp. 3d at 462 n.5 (citing *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 331 (3d Cir.2009)).

motion to dismiss under Rule 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A complaint is plausible on its face when there is enough factual content "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Although the plausibility standard "does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted).  As a result, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of [his] claims." *Id.* at 789.

In evaluating the sufficiency of a complaint, a district court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Phillips v. Ctny. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008).  A court, however, may "disregard threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements." *James v. City of Wilkes-Barre*, 700 F.3d 675, 681 (3d Cir. 2012) (citing *Iqbal*, 556 U.S. at 678-79).  "Once accepted as true and construed in the light most favorable to the plaintiff," the Court determines whether those factual allegations "plausibly give rise to an entitlement to relief." *Connelly*, 809 F.3d at 787 (quoting *Iqbal*, 556 U.S. at 679).

## III.    ANALYSIS

### A.  Personal Jurisdiction

Following jurisdictional discovery, HBN renewed their motion to dismiss, arguing that this Court still lacks personal jurisdiction over Nestlé and Honey Buyer.  (*See generally* Mot.)

A federal court "engages in a two-step inquiry to determine whether it may exercise personal jurisdiction": (1) "whether the relevant state long-arm statute permits the exercise of

jurisdiction," and (2) "if so, [whether] the exercise of jurisdiction comports with due process" under the Fourteenth Amendment. *Display Works, LLC v. Bartley*, 182 F. Supp. 3d 166, 172 (D.N.J. 2016) (citing *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 258-59 (3d Cir. 1998)). "New Jersey's long-arm statute extends the state's jurisdictional reach as far as the United States Constitution permits, so the analysis turns on the federal constitutional standard for personal jurisdiction." *Id.* Accordingly, the two steps are collapsed into one and the Court "ask[s] whether, under the Due Process Clause, the defendant has certain minimum contacts with [New Jersey] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316 (3d Cir. 2007) (internal quotation marks omitted). In other words, to establish personal jurisdiction, the Due Process Clause requires (1) minimum contacts between the defendant and the forum; and (2) that jurisdiction over the defendant comports with "fair play and substantial justice." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 320 (1945)).

In exercising personal jurisdiction over a defendant, a district court may assert either general jurisdiction (*i.e.*, "all-purpose" jurisdiction) or specific jurisdiction (*i.e.*, "case-linked" jurisdiction). *See Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty.*, 582 U.S. 255, 262 (2017).

### 1. General Jurisdiction

General jurisdiction exists where the defendant maintains "continuous and systematic" contacts with the forum "as to render them essentially 'at home' in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 121 (2014). "For a corporate defendant, the main bases for general jurisdiction are (1) the place of incorporation [or formation]; and (2) the principal place of business." *Display Works*, 182 F. Supp. 3d at 173 (citing *Daimler AG*, 571 U.S. at 136); *see also*

6

*Fischer v. Fed. Express Corp.*, 42 F.4th 366, 383 (3d Cir. 2022) ("For a corporation, general jurisdiction is only proper in states where the corporation is fairly regarded as 'at home,' which generally is restricted to the corporation's state of incorporation or the state of its principal place of business."). This Court has already held that there is no general jurisdiction over Nestlé, a Delaware entity with its principal place of business in Virginia, and the parties do not contest this prior ruling.[4] (Op. at 9 ("Without any allegations in the FAC evincing Nestlé being 'essentially at home' in New Jersey, there are no grounds for general jurisdiction here.") Therefore, the Court turns to whether it may exercise specific jurisdiction.

### 2. Specific Jurisdiction

Specific jurisdiction allows a court to adjudicate claims levied against defendants with "certain minimum contacts . . . such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co.*, 326 U.S. at 316 (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). Courts in this Circuit follow a three-part test to determine whether specific jurisdiction exists as to a particular defendant: (1) the defendant must have "purposefully directed [its] activities at the forum;" (2) the plaintiff's claim must "arise out of or relate to" the defendant's activities; and (3) exercising personal jurisdiction must not "offend traditional notions of fair play and substantial justice." *O'Connor*, 496 F.3d at 317 (internal quotation marks omitted).

Moreover, specific jurisdiction determinations are "claim specific." *Remick v. Manfredy*, 238 F.3d 248, 255 (3d Cir. 2001). Here, Plaintiff brings one cause of action for tortious interference with contract against HBN. (FAC ¶¶ 109-15.) When an intentional tort is alleged, a slight variation from the *O'Connor* three-part test applies, known as the *Calder* effects test,

---

[4] Again, this Court declines to consider whether Honey Buyer is subject to the general jurisdiction of this Court as Plaintiff does not allege so. (*See* Op. at 9; FAC ¶¶ 16-19.)

stemming from the United States Supreme Court's decision in *Calder v. Jones*, 465 U.S. 783 (1984). The *Calder* effects test "can demonstrate a court's jurisdiction over a defendant even when the defendant's contacts with the forum alone [] are far too small to comport with the requirements of due process under our traditional analysis." *Marten v. Godwin*, 499 F.3d 290, 297 (3d Cir. 2007)). Under this test, "an intentional tort directed at the plaintiff and having sufficient impact upon [the plaintiff] in the forum may suffice to enhance otherwise insufficient contacts with the forum such that the 'minimum contacts' prong of the Due Process test is satisfied." *Id.* (quoting *IMO Industries.*, 155 F.3d at 260). The *Calder* effects test requires a plaintiff to show that:

> (1) The defendant committed an intentional tort;
> (2) The plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that tort;
> (3) The defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity[.]

*Id.*[5]

This Court has already noted that "the third prong of the effects test—whether the defendant 'expressly aimed' its tortious conduct at New Jersey—is a threshold inquiry." (Op. at 11.) The plaintiff carries an "onerous burden" in making that showing. *Torre v. Kardooni*, No. 22-4693, 2022 WL 17813069, at *4 (D.N.J. Nov. 29, 2022).[6] To satisfy the "expressly aimed" element of the effects test, the plaintiff must "(1) show that the defendant knew that the plaintiff would feel the thrust of the tortious conduct in the forum; and (2) specifically point to activity that

---

[5] The *Calder* effects test still requires that a "defendant's conduct and connection with the forum State [be] such that he should reasonably anticipate being haled into court there." *Marten*, 499 F.3d at 297 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

[6] Report and recommendation adopted, No. 22-4693, 2022 WL 17812193 (D.N.J. Dec. 19, 2022); *Doe v. Hesketh*, 15 F. Supp. 3d 586, 593 (E.D. Pa. 2014) ("[The 'expressly aimed'] standard is exacting.").

indicates the defendant expressly and intentionally targeted the tortious conduct at the forum." *Id.* (citing *Marten*, 499 F.3d at 298). "If a plaintiff fails to show that the defendant 'manifest[ed] behavior intentionally targeted at and focused on' the forum, the plaintiff fails to establish jurisdiction under the effects test." *Marten*, 499 F.3d at 298 (citing *IMO Indus.*, 155 F.3d at 265).

### a. Jurisdictional Discovery

The Court's December 5, 2024 Opinion noted that "Plaintiff does not point to any specific activity that Nestlé or Honey Buyer aimed at New Jersey, nor does Plaintiff explain how either Nestlé or Honey Buyer intentionally directed their allegedly tortious conduct at New Jersey." (Op. at 12.) Plaintiff's claim that HBN "allegedly committed tortious acts that impacted and injured Plaintiff in the State of New Jersey," is "insufficient" to establish specific personal jurisdiction. (*Id.* (citing FAC ¶ 17).) Nevertheless, this Court denied HBN's first motion to dismiss without prejudice to allow for jurisdictional discovery regarding the "agreements and other information bearing on Nestlé and Honey Buyer's acquisition of Freshly and the Kettle Cuisine Transaction." (*Id.* at 13.)

The jurisdictional discovery record shows that Nestlé acquired 100% of Freshly through Honey Buyer on October 30, 2020, and that the transaction documents identified the Master Agreement as a "Material Contract" and Cryopak as a "Material Supplier." (ECF 98-2, "Pl. Ex. 1" at NESTLE_000000434-37; ECF 98-5, "Pl. Ex. 4" at NESTLE_000000723-25.) The documents confirm that Freshly sent Honey Buyer "a true, correct, and accurate copy" of the Master Agreement and that it was "in full force and effect." (Pl. Ex. 1 at NESTLE_000000436.) The Master Agreement itself, on its face, identifies Cryopak as a New Jersey corporation with its principal place of business in New Jersey. (FAC at Ex. A.) The transaction documents further

confirm that Freshly paid Cryopak $8.3 million and $6.85 million in the twelve- and eight-month periods preceding the October 2020 acquisition, respectively. (Pl. Ex. 4 at NESTLE_000000725.)

Nestlé divested its interest in Freshly to *L* Catterton in November 2022, and again the documents identify Cryopak as a Material Supplier based on Freshly's payments to Cryopak of approximately $13.8 million and $5.8 million in the twelve- and nine-month periods preceding the November 2022 divestiture, respectively. (ECF 98-6, "Pl. Ex. 5" at NESTLE_000000051; ECF 98-7, "Pl. Ex. 6" at NESTLE_000000230-31.) Notably, however, the Master Agreement was not listed as a Material Contract, and Cryopak is not mentioned anywhere in the November 2022 transaction documents. (*See generally* Pl. Ex. 6.)

Plaintiff deposed Brad Goshorn, Nestlé's Director of Mergers, Acquisitions, and Strategy, on October 28, 2025. (ECF 98-4, "Pl. Ex. 3.") Mr. Goshorn testified that Nestlé compiled and reviewed the Master Agreement, which states Cryopak is a New Jersey corporation with its principal place of business in New Jersey on its face, (*see* FAC at Ex. A,) and identified it as an "active contract" during negotiations leading up to the November 2022 divestiture. (Pl. Ex. 3 at 19:2-10, 25:17-26:3, 28:4-11.) Yet Mr. Goshorn also testified that he had not personally seen the Master Agreement prior to his deposition, and that he did not know where Cryopak was located before this litigation. (*Id.* at 24:4-6, 89:15-17.)

Plaintiff also details various findings from jurisdictional discovery that are not directly related to the Court's determination of personal jurisdiction over HBN.[7] (*See* Opp. at 7-15.) However, the Court notes its review out of an abundance of caution.

---

[7] The facts include the following: Mr. Goshorn testified that *L* Catterton advised Nestlé during negotiations that there was a "strong possibility" that Freshly would be wound down following the transaction, as Freshly's financial performance "was continuing to decline." (Pl. Ex. 3 at 32:17-33:2, 70:19-71:7.) Mr. Goshorn further testified that that Nestlé did not know what *L* Catterton's "final decision" would be at the time of closing the November 2022 divestiture. (*Id.* at 74:2-14.) In connection with the divestiture, Nestlé prepared a spreadsheet captioned "Fresco - Contract

### b. *Calder* Application

Plaintiff has not cured its pleading deficiencies following the completion of jurisdictional discovery. Beginning with the third prong of the *Calder* effects test, Plaintiff failed to show that HBN "expressly aimed" its alleged tortious conduct at New Jersey. *Torre*, 2022 WL 17813069, at *4. The third prong requires Plaintiff (1) to prove that HBN knew Cryopak would feel HBN's alleged tortious interference with Cryopak's Master Agreement in New Jersey and (2) to identify activity indicating that HBN "expressly and intentionally targeted" its alleged conduct at New Jersey. *Id.*

Plaintiff argues that HBN knew its divestiture of Freshly would impact Cryopak in New Jersey because the Master Agreement, which HBN reviewed at least twice before the November 2022 divestiture, shows that Cryopak is a "New Jersey entity with its principal place of business in New Jersey."[8] (Opp. at 20-25.) Defendants argue that HBN had no knowledge of Cryopak's

---

Termination Provisions" with the assistance of outside counsel. (ECF 98-9, 98-11; Pl. Ex. 3 at 48:5-51:15.) According to HBN, the 380-line spreadsheet summarizes hundreds of Freshly's contractual relationships where the Master Agreement appears as a single line. (Reply at 3 n.1.) The spreadsheet considered whether Freshly's contracts would expire before or after the "winddown," whether Freshly may terminate for convenience, and what fees would apply to early termination. (ECF 98-9, 98-11.) On November 11, 2022, days before the divestiture was finalized on November 18, 2022, a representative of *L* Catterton emailed Mr. Goshorn asking for "any update on the status of Latham's wind down contract review." (ECF 98-10.) Mr. Goshorn responded by providing the spreadsheet and wrote that *L* Catterton should refer to it for "the limited contracts where we can't terminate at will and there may be some limited exposure through the post winddown contract expiry." (*Id.*) Additionally, the November 2022 transaction documents identified certain individuals as having "knowledge of Nestlé" for purposes of the transaction and those were the individuals "most involved in negotiating" with *L* Catterton. (Pl. Ex. 5 at NESTLE_000000012; Pl. Ex. 3 at 38:10-20, 39:21-40:1.) Email records show that at least three of those individuals were subsequently involved in *L* Catterton's winddown of Freshly. (ECF 98-11.)

[8] Plaintiff also argues that HBN expressly aimed its conduct at New Jersey because HBN's alleged tortious interference "directly relate[s] to the Master Agreement," the source of Plaintiff's alleged injury. (Opp. at 19.) This Court, however, has already held this argument to be "insufficient." (Op. at 12.)

New Jerseyan status due to Mr. Goshorn attesting to a personal lack of knowledge.  (Reply at 10; *see also supra* Section III.A.2.a.)  The Court need not make a factual determination here.  Even if HBN knew that Cryopak was headquartered in New Jersey, that is insufficient to satisfy the "expressly aimed" prong.  *See IMO Indus., Inc.*, 155 F.3d at 265 & n.8 ("Simply asserting that the defendant knew that the plaintiff's principal place of business was located in the forum would be insufficient in itself to meet this requirement."); *New Earthshell Corp. v. Lycos Internet Ltd.*, No. 14-CV-7665, 2015 WL 4716155, at *4 (D.N.J. Aug. 7, 2015) ("Plaintiff has not established a prima facie case to support personal jurisdiction over the Defendants because Plaintiff has not alleged facts showing that Defendants expressly aimed their conduct at New Jersey. Plaintiff argues that Defendants knew, or must have known, based on 'cursory due diligence' in connection with the transactions . . . that Plaintiff's principal place of business was in New Jersey. However, such knowledge alone is insufficient to support the exercise of jurisdiction." (internal citations omitted)).

Plaintiff offers no facts, other than HBN's alleged knowledge of Cryopak's ties to New Jersey due to the contents of the Master Agreement, that show HBN "expressly and intentionally targeted" its alleged tortious interference at New Jersey.  *Torre*, 2022 WL 17813069, at *4. Plaintiff argues that such knowledge is sufficient under *MaxLite, Inc. v. ATG Elecs., Inc.*, 193 F. Supp. 3d 371 (D.N.J. 2016).  (Opp. at 25.)  But *MaxLite* is inapposite here.  There, the defendant had expressly aimed conduct at New Jersey in addition to its knowledge it gleaned from review of contract documents.  *MaxLite, Inc.*, 193 F. Supp. 3d at 390 ("ATG competes with MaxLite in New Jersey and knows that MaxLite is headquartered in New Jersey. The Employee Defendants, after they joined ATG, solicited MaxLite employees to do the same. Critically, ATG used the Employee Defendants in an effort to increase its sales in New Jersey.")  Analogous additional forum-directed

12

facts are missing in this case.  Here, HBN's divestiture of Freshly "occurred entirely outside New Jersey' no New Jersey entities were party to the agreements; and New Jersey is not mentioned in the transaction documents."  (Reply at 12.)  And performance under the Master Agreement took place outside New Jersey.  (FAC ¶¶ 4-11.)

Plaintiff has not shown sufficient minimum contacts between HBN and New Jersey under the *Calder* effects test.  Therefore, this Court declines to exercise specific jurisdiction over HBN. Having determined that Plaintiff has not demonstrated that the Court maintains personal jurisdiction over HBN, the Court need not consider Defendants' alternative grounds for dismissal.

## IV.    CONCLUSION

For the reasons set forth above, HBN's Motion is **GRANTED** and Count IV of Plaintiff's Amended Complaint is **DISMISSED** with prejudice for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2).  *See Danziger & De Llano, LLP v. Morgan Verkamp LLC*, 948 F.3d 124, 132 (3d Cir. 2020) (affirming dismissal with prejudice for lack of personal jurisdiction because Plaintiff could refile in the proper forum state).  An appropriate order follows.

*/s/ Jamel K. Semper*
**HON. JAMEL K. SEMPER**
**United States District Judge**

Orig:        Clerk
cc:          Stacey D. Adams, U.S.M.J.